In the Matter of Disciplinary Proceedings Against
Seth P. Hartigan, Attorney at Law:

Office of Lawyer Regulation, Complainant,

v.

Seth P. Hartigan, Respondent.

Supreme Court

*No. 03–2118–D. Decided January 19, 2005.*

2005 WI 3

(Also reported in 690 N.W.2d 831.)

¶ 1. PER CURIAM. We review the referee's report and recommendation that Attorney Seth P. Hartigan's license to practice law in this state be suspended for six months for his professional misconduct as alleged in the complaint filed by the Office of Lawyer Regulation (OLR) in this court on August 11, 2003. That complaint alleged that Hartigan, who was admitted to practice law in January 1998 and who had no prior disciplinary history, had committed six counts of professional misconduct involving two separate client matters.

¶ 2. Attorney Michael Ash, appointed to act as referee in this matter, scheduled a hearing for August 16, 2004. Hartigan, however, notified the referee on August 6, 2004, that because of his new employment, he would not be able to attend the scheduled hearing and contest the allegations against him.

¶ 3. At the hearing, in Hartigan's absence, the OLR presented testimony from several witnesses and evidence supporting all six of the misconduct allegations set out in its complaint. Referee Ash then granted OLR's motion for default based on Hartigan's failure to appear at that public hearing. The referee has now filed his report, findings of fact, conclusions and his recommendation that Hartigan's license to practice law in this state be suspended for six months for his six counts of professional misconduct. The referee has also recommended that Hartigan be required to pay the cost of these proceedings now totaling $8035.53.

¶ 4. No appeal has been filed by either Hartigan or the OLR.

¶ 5. In summary, Hartigan's misconduct, as alleged in the OLR complaint, involved, among other things, fraud upon the law firm where he worked. It was alleged that Hartigan had accepted a laptop computer worth $2300 as payment for his legal services in representing his client, R.H., who was facing two OWI charges. After Hartigan accepted the laptop computer from R.H., he retained it for his own personal use. Hartigan thereafter failed to appear on behalf of R.H., failed to provide adequate notice that he was withdrawing as R.H.'s counsel, and failed to inform R.H. of the status of his request for an adjournment. In addition, Hartigan filed a motion to withdraw as R.H.'s counsel and misrepresented to the circuit court that R.H. had refused to abide by their written fee agreement. Hartigan also failed to notify R.H. that he had to appear for a scheduled trial date, and when R.H. failed to appear on that date, a bench warrant was issued and he was arrested.

¶ 6. It was also alleged that after R.H. filed a grievance with OLR, Hartigan made various misrepresentations to OLR staff investigating the grievance including an assertion that his law firm knew he had accepted the laptop computer as a fee for legal services. Hartigan also submitted a misleading document to OLR that he had drafted for a colleague's signature; that document reported that Hartigan had donated the computer to a public service hotline when, in fact, he had not done so.

¶ 7. That course of conduct involving client R.H. led to the first four counts of misconduct as alleged in OLR's complaint.

¶ 8. With respect to the second client matter, the OLR complaint alleged that Hartigan had been retained to represent D.B. who was, at that time, incarcerated at

343

Taycheedah. D.B.'s father paid Hartigan an initial retainer of $750 for his assistance at her upcoming parole hearing. Hartigan wrote to D.B. arranging to meet with her at the prison on March 7, 2002 but he failed to do so, and he did not call her or anyone at the prison to inform D.B. that he would not be there. In a subsequent telephone conversation with D.B., Hartigan discussed two pro se matters she had filed, but he did not discuss with D.B. her upcoming parole hearing. Hartigan told D.B. that he would get back to her at a later date to discuss and prepare for that hearing, but did not do so.

¶ 9. During his telephone conversation with D.B., Hartigan asked her to send him her paperwork on the two pro se matters she had filed; he told D.B. that he would look at the documents, copy them, and then return them to her as soon as possible. D.B. mailed the documents to Hartigan but he did not send them back as he had promised.

¶ 10. Subsequently, Hartigan agreed to meet with D.B. three days before her scheduled parole hearing; however, he failed to appear at that meeting and did not call D.B. to inform her that he would not appear on her behalf at the parole hearing. It was also alleged that Hartigan did not otherwise contact D.B. or do anything to assist or help her prepare for her parole hearing; as a result, D.B. attended the parole hearing by herself without counsel. D.B. was not granted parole and she served the remainder of her sentence until her mandatory release date.

¶ 11. That course of conduct involving client D.B. led to the remaining two counts of misconduct alleged by the OLR in its complaint.

¶ 12. After hearing testimony and receiving evidence at the hearing in this matter, the referee reached the following conclusions of law:

## REGARDING CLIENT R.H.

- ¶ 13 By accepting a laptop computer as payment for legal fees and by retaining it and using it solely for his own benefit, without disclosure to, the knowledge of, consent of, or permission from, his employer, Hartigan engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation and thereby violated SCR 20:8.4(c).[1]

- ¶ 14 By falsely informing the OLR in the course of its investigation that his employer was aware that he had accepted a laptop computer from R.H. as payment for legal services, Hartigan made a misrepresentation in a disclosure to the OLR in the course of its investigation and thereby violated SCR 22.03(6).[2]

- ¶ 15 By failing to inform or send a copy of his motion to withdraw to his client R.H., and by failing to timely inform R.H. of the status of his request for an adjournment of a scheduled court hearing, Hartigan failed to take steps to the extent reasonably practicable to protect his client's interest upon termination of his representation and thereby violated SCR 20:1.16(d).[3]

---

[1] SCR 20:8.4(c) provides: "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[2] SCR 22.03(6) provides: "(6) In the course of the investigation, the respondent's willful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[3] SCR 20:1.16(d) provides: "(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other

- ¶ 16 By representing to the court in his motion to withdraw and papers accompanying it, that his client, R.H., had failed to abide by the terms of a written fee agreement when Hartigan knew this to be false, Hartigan knowingly made a false statement of fact to a tribunal and thereby violated SCR 20:3.3(a)(1).[4]

## REGARDING CLIENT D.B.

- ¶ 17 By failing to meet with his client, D.B., on March 7, 2002, or at any other time to advise her on, and prepare her for, her parole hearing, and by failing to consult with her promptly about his willingness to represent her in the pro se cases, Hartigan failed to explain a matter to his client to the extent reasonably necessary to permit the client to make informed decisions regarding her representation and thereby violated SCR 20:1.4(b).[5]

- ¶ 18 By failing to return D.B.'s papers to her for more than two months despite multiple requests that he do so, Hartigan failed to comply

---

counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

[4] SCR 20:3.3(a)(1) provides: "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal."

[5] SCR 20:1.4(b) provides: "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

promptly with his client's reasonable requests for information and thereby violated .SCR 20:1.4(a).[6]

¶ 19. After determining that Hartigan had committed the six counts of misconduct as alleged in the OLR complaint, the referee recommended that Hartigan's license to practice law in this state be suspended for a period of six months as a sanction for this course of serious misconduct. According to the referee, a six-month suspension would be comparable to the level of sanctions imposed in prior disciplinary cases such as *Disciplinary Proceedings Against Horvath,* 212 Wis. 2d 678, 568 N.W.2d 776 (1997); *Disciplinary Proceedings Against Usow,* 214 Wis. 2d 596, 571 N.W.2d 162 (1997); *Disciplinary Proceedings Against Landau,* 147 Wis. 2d 802, 434 N.W.2d 93 (1989); and *Disciplinary Proceedings Against O'Neill,* 117 Wis. 2d 347, 343 N.W.2d 807 (1984). The respondents in all those prior cases had received six-month suspensions for similar types of misconduct involving misrepresentation, misappropriation, failure to cooperate with OLR's investigation, and client neglect. Concluding that a similar six-month suspension was appropriate in this case, Referee Ash explained:

> As the evidence indicates, Hartigan breached duties to just about everyone: his law firm, a colleague at his law firm, his clients, tribunals before which he was appearing, and the OLR. Moreover, he more than once attempted to lie his way out of troublesome situations. At least one of his clients [R.H.] was arrested at his home and jailed, probably by reason of Hartigan's false statements to a court and callous indifference to the

[6] SCR 20:1.4(a) provides: "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

fate of R.H. (whom he had virtually abandoned). A second [D.B.]—imprisoned and desperate for legal services for which her father had paid—got none and went for weeks without legal papers she deemed critical and which she had trustfully placed in Hartigan's hands.

Furthermore, during the investigative portion of the disciplinary process, Hartigan intentionally made false statements and submitted false and misleading evidence to the OLR's investigators. Finally, there is nothing in the record that suggests remorse on the part of Hartigan or even any understanding or acknowledgment of the wrongful nature of his conduct. Referee's Report at 15–16.

¶ 20. After our review of the record, we adopt the referee's findings of fact and conclusions of law and accept the referee's recommendation that Hartigan's license to practice law in this state be suspended for a period of six months as a sanction for his numerous acts of misconduct. The lawyer regulation system in this state has been established to, among other things, "protect the public from misconduct by persons practicing law in Wisconsin." *See* Preamble to SCR Chapter 21. We view Hartigan's professional misconduct as serious infractions of the rules governing lawyers' professional behavior and responsibilities. We also agree that Hartigan shall pay the costs associated with this disciplinary proceeding now totaling $8035.53.

¶ 21. IT IS ORDERED that the license of Attorney Seth B. Hartigan to practice law in Wisconsin is suspended for a period of six months, effective the date of this order.

¶ 22. IT IS FURTHER ORDERED that Attorney Seth B. Hartigan shall comply, if he has not already done so, with the requirements of SCR 22.26 pertaining to activities following suspension.

¶ 23. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Seth B. Hartigan pay the OLR the cost of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Attorney Seth B. Hartigan to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 24. LOUIS B. BUTLER, J., did not participate.