# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP1820-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against John Miller Carroll, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>   Complainant,<br>  v.<br>John Miller Carroll,<br>   Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST CARROLL

| | |
|---|---|
| OPINION FILED: | December 19, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | |
|  COUNTY: | |
|  JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
|  NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

2013 WI 101

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2011AP1820-D

STATE OF WISCONSIN                    :         IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against John Miller Carroll, Attorney at Law:**

**Office of Lawyer Regulation,**

            **Complainant,**

      **v.**

**John Miller Carroll,**

            **Respondent.**

**FILED**

**DEC 19, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1  PER CURIAM.  We review the report filed by the referee, Richard P. Mozinski, recommending the court suspend Attorney John Miller Carroll's license to practice law in Wisconsin for five months for seven counts of professional misconduct.  No appeal has been filed, so we review the referee's report and recommendation pursuant to SCR 22.17(2).[1]

_____

[1] SCR 22.17(2) states as follows:

Upon careful review of the matter, we adopt the referee's findings of fact and conclusions of law. We agree with the referee that Attorney Carroll's professional misconduct warrants a five-month suspension of his license to practice law. We also find it appropriate to require him to pay the full costs of this proceeding, which were $27,438.26 as of May 13, 2013.

¶2 Attorney Carroll was admitted to the practice of law in Wisconsin in 1987 and practices in Appleton. In 1992 he received a private reprimand for failing to hold funds in trust in which both he and his former law firm claimed an interest. In 1997 he received a private reprimand for performing work for a client after his services were terminated and for misrepresenting that he had filed a motion on behalf of the client. In 1999 he received a public reprimand for neglect of a matter, failing to communicate with a client, and failing to return a retainer.

¶3 In 2002 Attorney Carroll's license was suspended for one year for eight counts of professional misconduct, four of which related to trust account and fee matters, and the other four involving failure to diligently pursue a client's claim, failure to keep a client reasonably informed about the status of

_____

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

a matter, failure to disclose to and cooperate with the Board of Attorneys Professional Responsibility (the predecessor to the Office of Lawyer Regulation (OLR)), and engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation. In re Disciplinary Proceedings Against Carroll, 2001 WI 130, 248 Wis. 2d 662, 636 N.W.2d 718. While suspended, Attorney Carroll consented to the issuance of a public reprimand for pre-suspension conduct involving loaning funds to a personal injury client in conjunction with pending litigation.

¶4 On August 9, 2011, the OLR filed a complaint against Attorney Carroll alleging ten counts of misconduct arising out of his handling of two client matters. Attorney Carroll filed an answer on September 26, 2011. He admitted the allegations in Count Two of the OLR's complaint and denied all other allegations.

¶5 The first four counts in the complaint arose out of Attorney Carroll's representation of T.R. In January 2007 T.R. was charged in two separate criminal cases. In one case, T.R. was charged with operating while intoxicated—fourth offense and operating after revocation. In the other case, he was charged with two counts of disorderly conduct. T.R. hired Attorney Carroll to represent him in both cases and paid Attorney Carroll $2,500 pursuant to a written fee agreement.

¶6 During pretrial proceedings Attorney Carroll made a timely demand for discovery. The discovery provided by the State did not include a tape of a 911 call made by a witness.

3

¶7    The two cases were tried at the same time to the same jury but were not formally consolidated.  During the trial, Attorney Carroll learned that a 911 tape might exist.  He discussed with T.R. whether a tape of the 911 call should be obtained.  He did not request a continuance of the trial and advised T.R. to proceed with the trial, saying that if the 911 tape was obtained after trial and proved exculpatory, then Attorney Carroll would file a motion for a new trial based on the prosecutor's failure to produce the tape.  T.R. agreed to proceed with the trial based on Attorney Carroll's advice.  The jury found T.R. guilty on all counts on April 10, 2007.

¶8    On or before May 14, 2007, Attorney Carroll received the 911 tape and gave it to T.R. to review.  T.R. promptly called Attorney Carroll and advised that the 911 tape showed that a witness had lied at trial.  During the phone call, Attorney Carroll advised T.R. that he would postpone the sentencing, obtain the transcripts from the trial and, if the 911 tape proved exculpatory, he could then file a motion for a new trial.  The sentencing was postponed at Attorney Carroll's request.

¶9    The day before the scheduled sentencing, a telephone conference took place between Attorney Carroll and T.R. during which they discussed whether Attorney Carroll had yet received the trial transcripts.  Upon being informed he had not, T.R. inquired whether the sentencing should again be postponed.  Attorney Carroll advised T.R. to proceed with the sentencing and said if the transcription of the 911 tape later proved

4

exculpatory, Attorney Carroll would then represent T.R. in an appeal of the convictions rather than filing a motion for a new trial.

¶10 The following day T.R. was sentenced in both cases. At the same time, Attorney Carroll filed a notice of intent to pursue postconviction relief in the OWI case but not in the disorderly conduct case.

¶11 On July 9, 2007, Attorney Carroll filed a notice of intent to pursue postconviction relief in the disorderly conduct case. The appeal was untimely; however, the court of appeals extended the time to file a notice of intent. After T.R. terminated Attorney Carroll's representation, successor counsel represented T.R. in both appeals.

¶12 Sometime prior to sentencing, Attorney Carroll and T.R. had discussed whether T.R. should obtain successor counsel for his appeals. Attorney Carroll advised T.R. he did not believe that T.R. had any ineffective assistance of counsel claims stemming from Attorney Carroll's representation of him at trial, and as a result, Attorney Carroll could represent T.R. in the appeal of the convictions. Based on Attorney Carroll's dual representations, T.R. agreed to be represented by Attorney Carroll on appeal.

¶13 Despite a potential conflict based on T.R.'s reliance on Attorney Carroll's advice and Attorney Carroll's opinion that T.R. had no ineffective assistance of counsel claims, Attorney Carroll did not obtain from T.R. a written waiver of any conflict of interest that might exist due to Attorney Carroll's

trial and appellate representation of T.R. on the appeals. Attorney Carroll entered into a written fee agreement for representation in the appeals.

¶14 Between the time Attorney Carroll filed the notice of intent to appeal in the OWI case and the time he filed the notice of intent in the disorderly conduct case, he filed a proposed order for a stay pending appeal in both cases even though the cases were never consolidated and no timely notice of intent had been filed in the disorderly conduct case. The circuit court granted the motion to stay the sentence in the OWI case, but denied the motion in the disorderly conduct case because no notice of intent had been filed.

¶15 Attorney Carroll scheduled another hearing in the disorderly conduct case, purportedly to reargue the motion to stay the sentence. He did not, however, file a new motion to stay the sentence or a written motion for a rehearing of the motion to stay. The circuit court ruled there was no motion before the court seeking a stay of sentence in the disorderly conduct case because the first motion had been denied and no new motion for a stay had been filed.

¶16 On August 17, 2007, T.R. terminated Attorney Carroll's representation because he was dissatisfied with Attorney Carroll's performance, particularly the failure to timely file the notice of intent to seek postconviction relief and failure to effectively argue for a stay of the sentence in the disorderly conduct case.

6

¶17 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Carroll's representation of T.R.:

> [COUNT ONE] By failing to timely file a Notice of Intent to Pursue Post-Conviction Relief on behalf of [T.R.] in [his disorderly conduct case], [Attorney] Carroll violated SCR 20:1.3.[2]

> [COUNT TWO] By failing to obtain [T.R.'s] written waiver of any conflicts of interest that might exist due to [Attorney] Carroll's representation of [T.R.] in the appeal of [his cases], [Attorney] Carroll violated former SCR 20:1.7(b),[3] in effect through June 30, 2007, and SCR 20:1.7(a)(2)[4] and

_____

[2] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[3] Former SCR 20:1.7(b) (effective through June 30, 2007) provided, in pertinent part, as follows:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

> (1) the lawyer reasonably believes the representation will not be adversely affected; and

> (2) the client consents in writing after consultation. . . . .

[4] SCR 20:1.7(a)(2) states as follows:

> Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: . . .

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

7

SCR 20:1.7(b)(1) and (4),[5] in effect as of July 1, 2007.

[COUNT THREE] By stating in his August 27, 2007 letter to [T.R.] that "Notice of Intent for Post-Conviction Relief was filed on June 26, 2007, with both matters on the caption, as both matters were consolidated for trial . . . ," when no Notice of Intent was filed by [Attorney] Carroll on June 26, 2007 and when two Notices of Intent filed by [Attorney] Carroll were filed on June 14, 2007 and July 11, 2007, and each related only to, and referred only to, one of the two cases, [Attorney] Carroll violated SCR 20:8.4(c).[6]

[COUNT FOUR] By misrepresenting to OLR that "I want to make it clear that once I determined that there was no basis for the Motion for a New Trial, I advised [T.R.] to seek other counsel, which he did. Therefore, I did not think it was necessary to actually have a written waiver. This occurred prior to filing the Notice of Appeals with the Court of Appeals, to the best of my recollection . . . ," when [T.R.] hired [Attorney] Carroll to represent him on his appeal after [Attorney] Carroll's advice that [T.R.] might want to seek other counsel until [T.R.] later terminated [Attorney] Carroll's appellate representation due to dissatisfaction with [Attorney]

---

[5] SCRs 20:1.7(b)(1) and (4) provide:

Notwithstanding the existence of a concurrent conflict of interest under par. (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

. . .

(4) each affected client gives informed consent, confirmed in a writing signed by the client.

[6] SCR 20:8.4(c) says it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

Carroll and to seek successor counsel, [Attorney] Carroll violated SCR 22.03(6)[7] via SCR 20:8.4(h).[8]

¶18 The other client matter detailed in the OLR's complaint involves Attorney Carroll's representation of J.H. In early July 2007, J.H. hired Attorney Carroll to represent him in a case in the United States District Court for the Eastern District of Wisconsin, in which J.H. had been charged with conspiracy to distribute and possession with intent to distribute methamphetamine. J.H. paid Attorney Carroll a $10,000 retainer fee for the representation. J.H. denied signing a written fee agreement. Although Attorney Carroll claimed there was a signed fee agreement, he could not produce it.

¶19 J.H.'s trial was scheduled for August 20, 2007, but the proceeding was converted to a plea hearing. Prior to that date Attorney Carroll received a proposed plea agreement from the federal prosecutor. J.H. denied seeing the plea agreement or reviewing its terms with Attorney Carroll at any time before being asked to sign it. Attorney Carroll disputed J.H.'s testimony.

---

[7] SCR 22.03(6) provides, "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[8] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

9

¶20 J.H. said that prior to August 20, 2007, Attorney Carroll did not (1) hire an investigator to work on the case, (2) discuss with J.H. whether he would testify at trial, (3) prepare J.H. to testify, or (4) review the consequences of the federal sentencing guidelines regarding false testimony and the range of penalties. Attorney Carroll admitted not hiring an investigator, but disputed that he had not interviewed potential witnesses and denied not discussing whether J.H. should testify at trial. Attorney Carroll said he also had discussed with J.H. the potential sentencing consequences of a conviction.

¶21 Attorney Carroll said that prior to August 20, 2007, he was aware that J.H. was concerned that a criminal conviction could result in the loss of his commercial driver's license (CDL). J.H. testified at a November 2007 motion hearing to withdraw his plea that he was told he would not lose his CDL as the result of the plea agreement. At the hearing before the referee, J.H. testified that Attorney Carroll did not represent this to him prior to signing the plea agreement, and that he learned about the consequences of a controlled substance conviction on his CDL after being incarcerated. Attorney Carroll said that as of the date J.H. entered the plea, he knew a felony conviction would impact J.H.'s CDL status and the plea agreement was modified to attempt to positively impact the CDL reinstatement process.

¶22 On August 20, 2007, on Attorney Carroll's advice, J.H. pled guilty to a one-count information charging him with possession with intent to deliver methamphetamine. As part of

10

the plea, J.H. gave a "proffer" statement to federal authorities regarding his knowledge of criminal activities. The federal prosecutor handling the case testified at the hearing before the referee that he had no specific recollection whether any sentencing enhancement was sought against J.H. related to purportedly untrue statements made by J.H. during the proffer.

¶23 J.H. testified at the hearing before the referee that in mid- to late-October 2007 he met with a supervisor at the U.S. probation office and this was the first time he was told he had pled guilty to a controlled substance violation that involved selling drugs out of his home. J.H. also testified at the hearing before the referee that he had an unclear or confused understanding whether he had pled to a felony or a misdemeanor because he had been focused on the penalty for the conviction being probation.

¶24 After the meeting with the probation officer, J.H. said he contacted Attorney Carroll because he was concerned about the statement in the plea agreement that he sold drugs out of his home. In late October 2007, Attorney Carroll filed a motion to withdraw J.H.'s plea. In a supporting brief, Attorney Carroll asserted, "It should be noted that [J.H.] was informed by the United States attorney that the language of the plea agreement, stating that the offense occurred in the home, would assure that the conviction would not affect his commercial driver's license." No such assurances were ever made by the U.S. attorney.

¶25 Sentencing in the case was set for November 13, 2007, but the court scheduled a hearing for the same date on J.H.'s motion to withdraw his plea. Prior to November 13, 2007, Attorney Carroll failed to obtain a written waiver of conflicts of interest as related to his representation of J.H. with regard to the plea agreement and the events of August 20, 2007. Attorney Carroll admitted at the November 13 hearing that there could be a conflict of interest between him and his client in connection with his representation of J.H. on the motion to withdraw J.H.'s guilty plea.

¶26 Prior to November 13, 2007, Attorney Carroll prepared an affidavit for the signature of government witness P.E., essentially recanting statements P.E. had made to a DEA agent investigating J.H. Attorney Carroll faxed the affidavit to J.H.'s wife and directed J.H. to find P.E. and get him to sign the affidavit.

¶27 J.H.'s trial was rescheduled for December 17, 2007. J.H. testified at the hearing before the referee that between November 13, 2007, and December 17, 2007, Attorney Carroll did not discuss J.H.'s trial testimony, assist in preparing him to testify, or discuss the consequences of false trial testimony. The OLR offered no proof to corroborate J.H.'s testimony.

¶28 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Carroll's representation of J.H.:

> [COUNT FIVE] By advising [J.H.] prior to or on
> November 13, 2007 to personally obtain the signature

12

of [a government witness] on an affidavit, [Attorney] Carroll violated SCR 20:1.1.[9]

[COUNT SIX] By (i) prior to August 20, 2007, failing to adequately discuss the offered plea agreement with [J.H.]; (ii) on August 20, 2007, failing to adequately and accurately advise [J.H.] of the implications of the plea agreement prior to signature; (iii) failing to adequately discuss with [J.H.] whether [J.H.] should testify at trial; (iv) failing to advise [J.H.] of possible civil forfeiture implications of stating in the plea agreement that [J.H.] had sold narcotics from his home; (v) failing to adequately explain to [J.H.] the federal sentencing guidelines; and (vi) failing to advise [J.H.] regarding the sentence enhancements that would result if he was found to have given materially false testimony at trial, [Attorney] Carroll violated SCR 20:1.2(a)[10] and SCR 20:1.4(b).[11]

---

[9] SCR 20:1.1 states, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[10] SCR 20:1.2(a) provides as follows:

Subject to pars. (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by SCR 20:1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[11] SCR 20:1.4(b) states, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

13

[COUNT SEVEN] By (i) failing to sufficiently research the implications of possible convictions on [J.H.'s] CDL prior to August 20, 2007; and (ii) failing to adequately prepare [Mr. and Mrs. J.H.] to testify, [Attorney] Carroll violated SCR 20:1.3.

[COUNT EIGHT] By representing [J.H.] on the Motion to Withdraw his plea when the Motion could be based, at least in part, on [Attorney] Carroll's acts and omissions with regard to the plea, and failing to obtain [J.H.'s] written waiver of those potential conflicts, [Attorney] Carroll violated SCR 20:1.7(a).[12]

[COUNT NINE] By stating in the Defendant's Brief in Support of Motion to Withdraw Guilty Plea that "it should be noted that [J.H.] was informed by the United States Attorney that the language of the plea agreement, stating that the offense occurred in the home, would assure that the conviction would not affect his commercial driver's license . . . ," when [Attorney] Carroll knew that no such assurances had been made, [Attorney] Carroll violated SCR 20:3.3(a)(1).[13]

[COUNT TEN] By advising [J.H.] on August 20, 2007 that the government had made assurances regarding

---

[12] SCR 20:1.7(a) states:

Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

[13] SCR 20:3.3(a)(1) states that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; . . . ."

14

[J.H.'s] CDL, [Attorney] Carroll violated SCR 20:8.4(c).

¶29 The hearing before the referee was held in Manitowoc, Wisconsin, on October 23, 24, and 25, 2012. The referee filed his report and recommendation on April 22, 2013. The referee said the testimony of both T.R. and J.H. raised serious credibility issues as to various factual matters alleged in the OLR's complaint. The referee said J.H.'s testimony, in particular, was problematic as to the facts supporting Counts Six, Seven, and Ten, because his testimony was largely uncorroborated by other evidence of record. The referee said although T.R.'s testimony was also suspect at points, there was sufficient corroborating evidence in the record for the OLR to meet its burden of proof as to the counts involving T.R.

¶30 The referee said Attorney Carroll's testimony was at times credible and at other times less so, but when compared head-to-head with J.H.'s testimony, the referee generally found Attorney Carroll's testimony more persuasive in the absence of other evidence. The referee found that the OLR met its burden of proof as to all counts related to T.R.

¶31 The referee found that OLR failed to meet its burden of proof as to Counts Six, Seven, and Ten. With respect to Counts Six and Seven (failure to inform and advise and failure to act with reasonable diligence), the referee said the OLR's inability to meet its burden of proof was directly related to J.H.'s lack of credibility on crucial facts not supported by corroborating evidence.

¶32 With respect to Count Ten, the referee noted the OLR predicated that count upon the allegation that Attorney Carroll had advised J.H. that the government made assurances regarding J.H.'s CDL. The referee said that "the disciplinary hearing testimony went in another direction." The referee found that the evidence of record failed to establish such a misrepresentation occurred.

¶33 Turning to the appropriate sanction, the OLR noted that Attorney Carroll has a significant disciplinary history, a pattern of misconduct in the current case that is similar to that present in his prior disciplinary cases, multiple counts of misconduct in the current case, a general refusal to acknowledge the wrongful nature of his misconduct, and substantial experience in the practice of law at the time the current offenses were committed. The referee found no dishonest or selfish motive and also noted that neither victim was particularly vulnerable. The referee found no mitigating factors with the exception of the remoteness of his prior disciplinary cases.

¶34 The OLR had sought a six-month suspension of Attorney Carroll's license. Attorney Carroll advocated for no suspension or a suspension not exceeding 30 days. The referee said given the number of violations proven and Attorney Carroll's disciplinary history, the sanction suggested by Attorney Carroll was inappropriate and unduly lenient. The referee concluded that a five-month suspension was appropriate. In reaching this conclusion, the referee noted that the OLR failed to meet its

16

burden of proof as to three of the ten counts alleged in its complaint. The referee found no proof of actual harm resulting from Attorney Carroll's misconduct. The referee noted that both T.R. and J.H. were convicted after trials. T.R.'s convictions were appealed. Although Attorney Carroll failed to properly initiate the appeal process in one case, failed to obtain a written conflict waiver, and misrepresented certain information to T.R., the referee pointed out that the court of appeals allowed both appeals to go forward. Thus, the referee reasoned Attorney Carroll's misconduct caused the potential for harm to T.R. in the appellate process as opposed to actual harm.

¶35 The referee noted that J.H. initially entered a plea, then successfully withdrew the plea, then was convicted at trial. While the OLR argued that J.H. might have received a lesser sentence if the matter had been handled properly, the referee noted the assistant U.S. attorney who handled the case could not definitively say that J.H. received a harsher sentence due to the decision to proceed to trial.

¶36 The referee also noted a significant period of time had elapsed since Attorney Carroll's last disciplinary violation.

¶37 In addition to recommending a five-month suspension, the referee recommended that Attorney Carroll be required to file with the court a written statement that he has read, understands, and agrees to be bound by and obey the court's rules concerning professional conduct for attorneys and the rules governing disciplinary proceedings. The referee noted the

OLR did not seek restitution. The referee deferred to this court on the issue of an appropriate award of costs.

¶38 This court will affirm a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. In re Disciplinary Proceedings Against Tully, 2005 WI 100, ¶25, 283 Wis. 2d 124, 699 N.W.2d 882. This court is free to impose whatever discipline it deems appropriate, regardless of the referee's recommendation. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶39 We adopt the referee's findings of fact because they have not been shown to be clearly erroneous, and we also agree with the referee's conclusions of law. After careful consideration of all of the circumstances of this case, we further agree with the referee that a five-month suspension of Attorney Carroll's license to practice law is an appropriate sanction.

¶40 In In re Disciplinary Proceedings Against Boyd, 2009 WI 59, 318 Wis. 2d 281, 767 N.W.2d 226, an attorney who was found to have engaged in 13 counts of misconduct arising out of five separate client matters, received a six-month suspension. The misconduct included failing to act with diligence and promptness in representing a client, failing to keep a client informed about the status of a matter, failing to refund a fee that was not earned, failing to hold property in trust, failing to cooperate with the OLR's investigation, and engaging in acts that resulted in a criminal conviction for disorderly conduct.

18

Attorney Boyd had been licensed to practice law for 20 years and had been professionally disciplined on three prior occasions.

¶41 In In re Disciplinary Proceedings Against Hartigan, 2005 WI 3, 277 Wis. 2d 341, 690 N.W.2d 831, an attorney who was found to have engaged in six counts of misconduct involving two separate client matters received a six-month suspension. The misconduct included engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; failing, upon termination of representation, to take steps to the extent reasonably practicable, to protect a client's interests; knowingly making a false statement of fact or law to a tribunal; failing to keep a client reasonably informed about the status of a matter; and failing to cooperate with the OLR's investigation. Attorney Hartigan had been practicing law for 15 years and had no prior disciplinary history.

¶42 Since no two cases are precisely analogous, there is no "standard" sanction for particular misconduct. Nevertheless, the sanctions imposed in prior cases are instructive in fashioning an appropriate remedy for the case at hand. Attorney Carroll has been practicing law for 25 years. He has been privately reprimanded on two occasions, publicly reprimanded on two occasions, and was previously suspended for one year. Ten years have elapsed since he was last sanctioned. The professional misconduct at issue here occurred in 2007. Upon consideration of all of the facts of this particular case, we agree with the referee that a five-month suspension of Attorney

19

Carroll's license to practice law in Wisconsin is an appropriate sanction.

¶43 Attorney Carroll has filed an objection to the statement of costs. He asserts the amount of costs is unreasonable since the OLR failed to prove three of the six counts related to the J.H. grievance. He also argues that a disproportionate amount of fees and costs relate to the J.H. matter. Attorney Carroll asks that costs be reduced by 50 percent.

¶44 The court's general policy upon a finding of misconduct is to impose all costs on the respondent attorney. See SCR 22.24(1m). Because the case presents no extraordinary circumstances, we conclude that Attorney Carroll should be required to pay the full costs of this proceeding.

¶45 We choose not to follow the referee's recommendation that Attorney Carroll be required to file a written statement that he has read, understands, and agrees to be bound by and obey the court's rules concerning professional conduct for attorneys and the rules governing disciplinary proceedings. As noted in the Preamble to Wisconsin Rules of Professional Conduct for Attorneys, "Compliance with the rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion and finally, when necessary, upon enforcement through disciplinary proceedings." SCR Chapter 20 Preamble, ¶[16]; see also id., ¶[7] ("A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession and

20

to exemplify the legal profession's ideals of public service.") All lawyers who practice law in Wisconsin are bound by the rules of professional conduct for attorneys and are presumed to know the rules and follow them. Requiring an attorney to file a written statement averring that he or she understands and agrees to be bound by the rules is redundant and unnecessary.

¶46 IT IS ORDERED that the license of John Miller Carroll to practice law in Wisconsin is suspended for a period of five months, effective January 23, 2014.

¶47 IT IS FURTHER ORDERED that within 60 days of the date of this order, John Miller Carroll shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $27,438.26.

¶48 IT IS FURTHER ORDERED that John Miller Carroll shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶49 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

¶50 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* Attorney Carroll has previously received two private reprimands, two public reprimands, and a one-year suspension. In this case he was found to have committed seven counts of professional misconduct. A five-month suspension of his license to practice law in Wisconsin is not in keeping with our system of progressive discipline. I would impose a suspension of at least six months.[1]

¶51 For the foregoing reasons, I respectfully dissent.

¶52 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[1] An attorney whose license is suspended for misconduct for six months or more must file a petition for reinstatement. See SCRs 22.28(3) and 22.29.

1